USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/29/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
DEVAYANI KHANNA,

                               Plaintiff,

            -against-

MUFG UNION BANK, N.A. and ROBERT NOLEN,
*in his individual and professional capacities,*

                              Defendants.

---------------------------------------------------------------- x

**18-CV-3031 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Devayani Khanna (hereinafter, "Plaintiff" or "Ms. Khanna") brings this action against MUFG Union Bank, N.A. ("MUFG") and Robert Nolen (collectively, "Defendants") for discriminatory treatment, retaliation, hostile work environment, and the unlawful termination of her employment in violation of 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 et seq. ("NYCHRL"), and Title VII, 42 U.S.C. §§ 2000e et seq. ("Title VII").

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 5, 2018. ECF No. 1. On June 6, 2018, Defendants filed a Letter Motion with the Court requesting a pre-motion conference to discuss their anticipated motion to dismiss. ECF No. 12. On June 26, 2018, Plaintiff filed an Amended Complaint. ECF No. 17. Defendants resubmitted their request for a pre-motion conference on July 3, 2019. ECF No. 18. On July 12, 2018, the Court denied Defendants' request for a pre-motion conference, but granted Defendants leave to file their Motion to Dismiss. ECF No. 20. On August 17, 2018, Defendants filed their Motion to Dismiss. ECF Nos. 24-25. Plaintiff filed

her Opposition on September 7, 2018. ECF No. 26. Defendants replied to Plaintiff's Opposition on September 21, 2018. ECF No. 28. On November 16, 2018, Plaintiff sought leave to file a second amended complaint exclusively to add Title VII discrimination claims. ECF No. 33. The Court granted Plaintiff's request on November 16, 2018. ECF No. 33. Plaintiff filed her Second Amended Complaint ("SAC") on November 16, 2018, and the Parties stipulated that they would rely on their previously filed Motion to Dismiss and Opposition papers with respect to Plaintiff's added Title VII claims. ECF No. 34-35.

Defendants' Motion is deemed fully briefed. After careful consideration, Defendants' Motion to dismiss is hereby **GRANTED**.

## BACKGROUND[1]

In June 2016, Ms. Khanna began working for Defendant MUFG Union Bank (hereinafter, "Union Bank"). SAC ¶ 1. Ms. Khanna was hired as a Program Manager at the Director-Level within Union Bank's Technology and Operations Group, also known as Integrated Services for the Americas ("ISA"). *Id.* ¶ 25. Ms. Khanna has extensive experience in the industry, and she was excited by the prospects of increased responsibility and compensation that Union Bank offered. *Id.* ¶¶ 1-2, 23-24. Ms. Khanna also believed that Union Bank had a positive reputation when it came to diversity and inclusion. *Id.* ¶¶ 3, 28.

During the first ten months of Ms. Khanna's tenure at Union Bank, she managed the implementation of an anti-money laundering system called Clean Slate. *Id.* ¶ 29. The Clean Slate system had three separate projects: (1) Vendor Platform Selection; (2) Continuous Monitoring Dashboard Phase 2; and (3) Data Tracking. *Id.* ¶ 29. Ms. Khanna was assigned a junior project

---

[1] When determining whether to dismiss a case, the court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Pursuant to that standard, this recitation of facts is based on Plaintiff's Second Amended Complaint and accompanying submissions. *See* ECF No. 34.

2

manager and a Vice President project manager to assist her, while Ms. Khanna herself reported to an ISA Managing Director, Liz Torres. *Id.* ¶ 31. In November 2018, Ms. Khanna was told to report to Yih-Chun Lin, a Risk and Compliance Portfolio Manager. *Id.* ¶32.

After her successful start, Ms. Khanna, along with Scott Bavis, was "reassigned" to work under Defendant Robert Nolen in the Financial Crimes Project Management Office ("FCPMO"). *Id.* ¶ 35. Prior to the transfer, Ms. Khanna was told that she "may not be given a comparable management role in FCPMO under Mr. Nolen." *Id.* ¶ 36. Over the next few months, Ms. Khanna did in fact see her role diminish, as Mr. Nolen hired two additional Director-Level Program Managers and proceeded to distribute Ms. Khanna's responsibilities amongst the new hires. *Id.* ¶ 37-40. Specifically, Mr. Nolen assigned Mr. Donatelli what were formerly Ms. Khanna's Continuous Monitoring and Data Tracing projects, thus leaving Ms. Khanna with only the Vendor Selection Project. *Id.* ¶ 40. Further, Mr. Nolen reassigned Ms. Khanna's project manager to Mr. Donatelli and failed to inform her that her junior project manager was being reassigned to another department. *Id.* ¶¶ 41, 45. Ms. Khanna spoke to Mr. Nolen about her reduction in work, but she was not assigned any additional projects. *Id.* ¶¶ 42-43.

In addition to the reduction in her assignments, Ms. Khanna alleges that Mr. Nolen "obstructed" her attempts to hire new project managers. *Id.* ¶ 45. Ms. Khanna interviewed and extended an offer to a project manager, but Mr. Nolen rejected the offer alleging that he did not have enough funding to hire a junior project manager. *Id.* ¶¶ 47-48. Ms. Khanna subsequently interviewed a candidate for a Vice President project manager, and Mr. Nolen delayed informing Ms. Khanna that he had hired that project manager who was ultimately designated to report directly to Mr. Nolen. *Id.* ¶ 49. Furthermore, Ms. Khanna alleges that Mr. Nolen physically isolated her from the rest of the FCPMO team by refusing to move her office. *Id.* ¶¶ 37, 50.

3

In June 2017, Ms. Khanna received her 2016 Year End Review. *Id.* ¶ 51. Ms. Khanna received a "Fully Meets Expectations" rating, but she alleges that the rating did not seem to reflect the positive feedback she had received from her work. *Id.* ¶ 52. Ms. Khanna's review included statements that she "clearly demonstrated solid EPLC pre-execution phase knowledge through managing the clean slate portfolio" and that she "is a very strong PM and well-liked by most of her stakeholders and partners." *Id.*

Feeling that her review did not adequately reflect her performance, Ms. Khanna spoke with Ms. Lin about her review. *Id.* ¶ 53. Ms. Lin informed Ms. Khanna that statements from "other individuals at the Bank (including Mr. Nolen)" were taken into consideration when determining an employee's overall rating. *Id.* ¶ 54. Following her meeting with Ms. Lin, Ms. Khanna and Mr. Nolen set up a meeting to discuss the review. *Id.* ¶¶ 55-57. During the meeting, Mr. Nolen indicated that "Fully Meets Expectations" was not a bad rating, and he also told her that "she should give notice if she planned on leaving the Bank." *Id.* ¶¶ 56-58. Additionally, Mr. Nolen told Ms. Khanna that she should say "please" and "thank you" at all times. *Id.* ¶ 58. Mr. Nolen did not address any performance issues during the meeting and "agreed that she was a strong project manager." *Id.* ¶ 59.

Approximately two months after her meeting with Mr. Nolen, on August 15, 2017, Ms. Khanna received a 60-Day Performance Improvement Plan ("PIP"). *Id.* ¶ 61. The PIP was dated July 26, 2017. *Id.* ¶ 62. Ms. Khanna never received an Individual Development Plan ("IDP") prior to receiving the PIP, as the Bank's Performance Management Policy directs. *Id.* ¶ 63. Additionally, Ms. Khanna had "multiple" one-on-one meetings with Mr. Nolen between July 26 and August 15, 2017, and Mr. Nolen never brought up any performance issues. *Id.* ¶ 62.

Ms. Khanna's PIP cited delays and timing issues pertaining to funding requests as areas that needed to be addressed. *Id.* ¶¶ 64-66. Further, the PIP indicated that Ms. Khanna "needed to improve her understanding of the Bank's Enterprise Project Lifecycle ("EPLC")." *Id.* ¶ 67. Ms. Khanna alleges that delays and timing issues regarding funding requests were "beyond her control" and any blame was improperly placed. *Id.* ¶¶ 64-66. Further, just two months prior, Ms. Khanna's Year End Review indicated that she "clearly demonstrated solid EPLC pre-execution phase knowledge through managing the clean slate portfolio. *Id.* ¶¶ 52, 67.

Roughly a month later, Ms. Khanna contacted the Bank's Employee Relations to discuss the review. *Id.* ¶ 68. She spoke with Sheryl Appelt about her disagreement with the PIP and "that she felt that Mr. Nolen was singling her out in comparison to the other Program Managers reporting to Mr. Nolen." *Id.* ¶ 69. The next day, Ms. Khanna met with Mr. Nolen and informed him of her discussion with Employee Relations. *Id.* ¶ 72. In response, Mr. Nolen "lashed out" at Ms. Khanna and told her that "she creates unnecessary work" and that she was "performing at the VP or Associate level." *Id.* ¶ 73. Both accusations were new to Ms. Khanna. *Id.* Following their meeting, Mr. Nolen allegedly updated the PIP with specific comments, including that Ms. Khanna had "submitted a funding request with 26 issues." *Id.* ¶¶ 74-75. Ms. Khanna claims that the issues alleged were incorrect or not previously filed. *Id.* ¶ 75.

On October 16, 2017, Ms. Khanna arrived at a pre-scheduled meeting with Mr. Nolen. *Id.* ¶¶ 76-77. When she arrived, a representative from Employee Relations was in the room and Mr. Nolen was on the telephone. *Id.* ¶ 77. Mr. Nolen informed Ms. Khanna that her 60-day PIP period was over and "he did not think she was capable of performing her job and had not improved enough." *Id.* ¶ 78. Ms. Khanna cites to "positive feedback" she received during her PIP including an e-mail from Carol Hopkins indicating that Ms. Khanna was "doing a wonderful

5

job," as well as an e-mail from Thomas Miller stating that Ms. Khanna was "the most organized and prepared PM we have here in this group." *Id.* ¶¶ 84-87. Despite these e-mails, Ms. Khanna's employment was terminated. *Id.* ¶ 79.

According to the Complaint, the following day, Michael Best "started working at the Bank in Ms. Khanna's position." *Id.* ¶ 80. Ms. Khanna claims that the timing of Mr. Best's hiring indicates that Mr. Nolen was looking for a replacement while Ms. Khanna was still employed. *Id.* ¶ 81. More specifically, Ms. Khanna claims that Mr. Nolen "made the decision after she challenged his discriminatory treatment of her and complained to Employee Relations." *Id.* ¶ 83.

Ms. Khanna alleges that Mr. Nolen treated her differently than her colleagues, and she claims that the reason for this differential treatment was due to her race and her gender. *Id.* ¶¶ 6-7, 11, 37-39. Ms. Khanna, who identifies as "an Asian woman of Indian descent," claims that "Mr. Nolen made it known, through his conduct, that he did not like Ms. Khanna, a minority woman." *Id.* ¶¶ 3, 7. In conjunction with the reduction of her assignments and the obstruction of and lack of disclosure regarding hiring project managers, Ms. Khanna claims that Mr. Nolen "was often short and abrupt" with her, that he kept her isolated from the FCPMO team, that he "unfairly criticized her work," "negatively influenced" her performance review, and inquired as to whether Ms. Khanna was leaving the Bank. *Id.* ¶ 7. Ms. Khanna alleges that Mr. Nolen, a white man, treated her differently than he did Kevin Vedder, Mr. Donatelli, and Mr. Davis, also white men. *Id.* ¶¶ 35, 37-39. She further alleges that Mr. Best, also a white man, started working in her position the day after she was fired. *Id.* ¶ 80.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded

6

factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

In her SAC, Plaintiff alleges that she was discriminated against on the basis of her race and gender, subjected to a hostile work environment, and ultimately terminated in violation of 42 U.S.C. § 1981, NYSHRL §§ 290 et seq., NYCHR §§ 8-101 et seq., and Title VII, 42 U.S.C. §§ 2000e et seq. Defendants have moved to dismiss all claims under F.R.C.P. 12(b)(6).

**I. Plaintiff has Failed to Allege Facts Sufficient to Support Her Claims that She Was Discriminated Against on the Basis of her Race and Gender**

"Disparate treatment claims brought under Title VII, Section 1981, and the NYSHRL are all analyzed under the same standard." *Parra v. City of White Plains*, 48 F.Supp.3d 542, 553 (S.D.N.Y. 2014). To sufficiently state a claim for gender or race-based discrimination, a plaintiff must satisfy their burden of "alleging facts suggesting an inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citing

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015). To do so, a plaintiff must allege two elements: (1) that the employer discriminated against her (2) "because of [her] race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 85. A plaintiff may satisfy the first element by a showing of "adverse employment action." *Id.*; *see Galabya v. N.Y.C. Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment ... [including] termination of employment.") A plaintiff may satisfy the second element by demonstrating that "a plaintiff's race, color, religion, sex or national origin ... was a substantial or motivating factor contributing to the employer's decision to take the action." *Vega*, 801 F.3d at 85 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989)) (internal quotations omitted). Regarding a plaintiff's burden, courts are to "be mindful of the elusive nature of intentional discrimination" because "clever men may easily conceal their motivations." *Id.* at 86 (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir. 1979)). A plaintiff may rely on "bits and pieces" of evidence to create a "mosaic" of intentional discrimination. *Id.*; (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998)).

Here, Plaintiff's employment was terminated on October 16, 2017. SAC ¶¶ 76-79. Thus, Plaintiff has successfully pled a materially adverse change in the terms and conditions of her employment. *See Galabya*, 202 F.3d at 640. Regarding the second element, however, Plaintiff has failed to allege facts sufficient to carry her burden. Plaintiff claims that she is a woman of Indian descent, and that her co-workers and boss are white men. SAC ¶¶ 7, 11, 35, 37-39, 80. Aside from those claims, Plaintiff's SAC includes no factual allegations that specify how her race or her gender were "substantial or material" factors in her termination. *Vega*, 801 F.3d at 85. Rather, Plaintiff indicates that she was transferred to work under Mr. Nolen. SAC ¶ 5. Mr. Nolen

hired other white men to her same position and split up the work that she was previously assigned. *Id.* ¶¶ 37-40. Plaintiff provides no information about the work that her co-workers were doing and how Mr. Nolen was treating those similarly situated differently from her. Ms. Khanna received a performance review that indicated that she "fully meets expectations." *Id.* ¶ 51. Ms. Khanna was unhappy with that review and learned that Mr. Nolen may have influenced the review. *Id.* ¶ 54. Ms. Khanna spoke with Mr. Nolen about the review, and he indicated that it was not a bad review. *Id.* ¶¶ 56-58. Ms. Khanna was then put on a Performance Improvement Plan that cited shortcomings in her work. *Id.* ¶ 61. A month later, Ms. Khanna spoke with Employee Relations because "she felt that Mr. Nolen was singling her out in comparison to the other Program Managers reporting to Mr. Nolen." *Id.* ¶¶ 68-69. The SAC does not indicate that Ms. Khanna told Employee Relations that she felt like she was being discriminated against on the basis of her race or gender, or any other statement that would plausibly give rise to the inference that her race or gender was the source of Mr. Nolen's treatment of her. Ms. Khanna then spoke Mr. Nolen about her review, and he proceeded to "lash[] out" and list numerous areas in which Plaintiff's performance was not up to par. *Id.* ¶¶ 72-75. Ms. Khanna's SAC does not include statements that Mr. Nolen made about her race or gender in the lone moment Ms. Khanna alleges that Mr. Nolen lost his temper. *Id.* Sixty days later, Mr. Nolen informed Ms. Khanna that she had not improved enough, and that her employment was being terminated. *Id.* ¶¶ 72-79. Plaintiff claims that Mr. Best, another white man, "started working at the bank in her position the next day," but provides no information that gender or race played a role in his appointment. *Id.* ¶ 80. Plaintiff's allegations attributing her termination to her race and gender are conclusory and insufficient to support her claims. While it is true that many industries are dominated by white

9

men, being out-numbered or the lone minority in an office setting is not enough, without more, to give rise to a gender or race-based discrimination claim.

## II. Plaintiff has Failed to Allege Facts Sufficient to Support Her Retaliation Claim

For a Title VII retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege two things: (1) that defendants discriminated or took adverse employment action against her (2) because she opposed any unlawful employment practice. *See Vega*, 801 F.3d at 90; 42 U.S.C. § 2000e-3(a). A plaintiff "must plausibly plead a connection between the act and [her] engagement in protected activity." *Id.* The proximity of the adverse action and protected activity can indirectly demonstrate a retaliatory purpose. *Id.*; *see Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2010). However, a plaintiff "must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action." *Id.* at 90-91; (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).[2] In other words, a plaintiff must show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91; (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). Additionally, "plaintiff is required to have had good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII." *Id.*; (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)). A plaintiff does not necessarily meet her burden simply by complaining of something that "appears to be discrimination in some form." *Id.* at 15. Furthermore, an employer must have understood, or could reasonably have understood, that a plaintiff was opposing conduct prohibited by Title VII. *See id.*; *Galdieri-Ambronsini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

---

[2] Note that this is a different standard than the "substantial" or "motivating" factor standard applied to Title VII discrimination claims. *See Vega*, 801 F.3d at 90-91.

Here, as stated, Plaintiff has demonstrated that adverse employment action was taken against her when her employment was terminated. SAC ¶¶ 76-79. Additionally, Ms. Khanna alleges that she spoke to Employee Relations about her 2016 End of Year Review. *Id.* ¶ 68. When she told Mr. Nolen about the meeting, he allegedly "lashed out" and told her that "she creates unnecessary work" and was "performing at the VP or Associate level." *Id.* ¶ 73. Mr. Nolen then updated the PIP with specific comments speaking to her lack of performance. *Id.* ¶¶ 74-75. While Ms. Khanna alleges adverse employment action, she does not demonstrate that the "adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 301 F.3d at 90. According to her SAC, Ms. Khanna was already halfway through her PIP when she spoke with Employee Relations about the 2016 End of Year Review. SAC ¶ 68. Thus, Plaintiff has not demonstrated that her termination was a "but-for" cause of her confronting Mr. Nolen about her 2016 End of Year Review because she was already being monitored for underperformance. *See Vega*, 801 F.3d at 90. Therefore, Plaintiff has not sufficiently alleged a retaliation claim.

### III. Plaintiff has Failed to Allege Facts Sufficient to Support her Hostile Work Environment Claim

For a hostile work environment claim to survive a motion to dismiss, a plaintiff "must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)). The test has both a subjective and objective component. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). A plaintiff must plead facts that would tend to show that the complained of conduct: "(1) is objectively severe or pervasive ... [or] creates an

11

environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Id.* Courts are to consider the totality of the circumstances when assessing the hostility of the environment. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 5010 U.S. 17, 21 (1993)). Some relevant factors include (1) the frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether it is threatening, humiliating, or merely an offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance. *Id.*

As with her gender and race-based discrimination claims, Ms. Khanna has failed to allege facts sufficient to support her hostile work environment claim. As indicated, Plaintiff has not alleged severe or pervasive conduct. Plaintiff makes no mention of discriminatory comments or conduct directed at her due to her race or gender. Plaintiff makes no claims of abuse, and her claims of hostility are encapsulated by Mr. Nolen "lash[ing] out" at her as well as vague references to conduct that "made it known" that Mr. Nolen did not "like" Ms. Khanna. SAC ¶¶ 7, 73. Plaintiff's SAC fails to point to threatening or humiliating conduct motivated by her status as a woman of Indian descent. Thus, Plaintiff has failed to state a hostile work environment claim.

## IV. The Court Declines to Maintain Supplemental Jurisdiction Over Plaintiff's NYCHRL Claims

In addition to her Title VII, Section 1981, and NYSHRL claims, Plaintiff also alleges violations of NYCHRL. Pursuant to the Local Civil Rights Restoration Act of 2005, NYCHRL claims are to be analyzed "separately and independently from federal and state discrimination claims."[3] *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). However, all of Plaintiff's federal claims have been dismissed as to all Defendants. This

---

[3] The NYCHRL standard is lower than the federal standard for disparate treatment claims. *Mihalik*, 715 F.3d at 109-10; *see Feliciano v. City of New York*, 2015 WL 4393162, *4 (S.D.N.Y. July 15, 2015).

Court no longer has federal question jurisdiction under 28 U.S.C. § 1331, as the disposition of this case no longer arises from a federally created cause of action nor "depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citations omitted). Therefore, Plaintiff's NYCHRL claims are dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby **GRANTED** as to all Defendants.

**SO ORDERED.**

**Dated:** **March 29, 2019**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**